IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEANDRA ALLEN,                          :    CIVIL ACTION
                                        :    NO. 11-4107
            Plaintiff,                  :
                                        :
      v.                                :
                                        :
NUTRISYSTEM, INC.,                      :
                                        :
            Defendant.                  :


                    M E M O R A N D U M

EDUARDO C. ROBRENO, J.                             April 25, 2013


            In this case, Leandra Allen ("Plaintiff") claims her

former employer, Nutrisystem, Inc. ("Defendant"), retaliated

against her in violation of 42 U.S.C. § 1981 and the Family and

Medical Leave Act ("FMLA"). Defendant moved for summary

judgment. For the reasons that follow, the Court will grant

Defendant's motion and enter judgment in favor of Defendant on

all counts.


**I. BACKGROUND**

            Plaintiff worked for Defendant as a customer service

representative from May 5, 2008, until her termination on

September 2, 2010. Allen Dep. vol. I, 41:13-16, Feb. 8, 2012, ECF

No. 16-15; Def.'s Mot. Summ. J. Ex. L, Hire Form, ECF No. 16-14.

Plaintiff's responsibilities included assisting Defendant's

customers with any questions they had about its products, handling billing issues, and dealing with outside vendors. Allen Dep. vol. I, 35:3-36:6. As part of the hiring process, Plaintiff signed various forms acknowledging receipt of Defendant's Employee Handbook, Call Center Code of Conduct, and job description. See Def.'s Mot. Summ. J. Exs. J-K, ECF Nos. 16-12 to -13. The Call Center Code of Conduct generally instructs employees to work hard to solve customer issues and to treat customers with respect. Def.'s Mot. Summ. J. Ex. J, at 3. The Nutrisystem Employee Handbook specifies that disciplinary action and discharge may be levied against employees who violate the Call Center Code of Conduct. Def.'s Mot. Summ. J. Ex. K, at 3. It is undisputed that rude treatment of customers subjects an employee to immediate termination. Id.

During Plaintiff's tenure at Nutrisystem, she had several different supervisors. Allen Dep. vol. I, 36:7-37:7. Their names and periods of supervision over Plaintiff are: (1) Linda Hartman, who supervised Plaintiff from Plaintiff's date of hire until February 16, 2009; (2) Maureen Shaeffer, who supervised Plaintiff from February 16, 2009 until July of 2010; and (3) Patricia Houser, who supervised Plaintiff thereafter until Plaintiff's termination on September 2, 2010. Id.

Supervisors Hartman and Schaeffer gave Plaintiff a performance examination in May 2009, almost one year after

Plaintiff started at Nutrisystem. <u>See</u> Def.'s Mot. Summ J. Ex. O, Performance Appraisal 1, ECF No. 16-17. Plaintiff received a rating of "meets expectations." <u>Id.</u>[1]

Plaintiff then started having issues with other Nutrisystem staff members. These complaints include the following. On January 4, 2010, Plaintiff sent an email to Shaeffer about "offenses" she wanted Shaeffer to investigate. <u>See</u> <u>id.</u> Ex. X, ECF No. 16-27. Specifically, Plaintiff complained about rude comments made by Matea Hartridge, an employee, and Mercedez Hobson, Plaintiff's Sunday supervisor, which Plaintiff believed were directed at her. <u>See</u> <u>id.</u> These comments included Hartridge saying "[Plaintiff] looks like shit every day" and "somebody is going crazy." <u>Id.</u> Plaintiff also alleges that Hobson said things like "there is something wrong with [Plaintiff]." <u>Id.</u> Shaeffer and Lynn Schmidt, another supervisor, spoke with Plaintiff for 40 minutes about her complaint. <u>See</u> <u>id.</u> Ex. Y. To resolve the matter, Shaeffer told Plaintiff's team, which included both Hartridge and Hobson, that "rude and harassing behaviors would not be tolerated." <u>Id.</u> Ex. AA; <u>see also</u> Carrington Dep. 25:7-11, Mar. 23, 2012, ECF No. 16-23.

---

[1] "Meets expectations" is the third of five employee ratings, which are, from worst to best: failed to perform; below expectations; meets expectations; exceeds expectations; and greatly exceeds expectations. <u>See</u> <u>id.</u>

On February 1, 2010, Plaintiff submitted a written complaint with Defendant's human resources department. Def.'s Mot. Summ. J. Ex. BB, ECF No. 16-30. The complaint, in general, included the same allegations against the parties above, but also included allegations that Jameece Nickerson, another employee, said rude things in her general direction. Id. at 2-3. Plaintiff also complained that Hartridge was "rude when spoken to" and had denied Plaintiff's requests for help. Id. at 2. Defendant investigated the complaint. Carrington Dep. 29:14-31:10. Defendant also allowed Plaintiff to move her seat. Def.'s Mot. Summ. J. Ex. CC, ECF No. 16-31. And Shaeffer and Lynnea Carrington, one of Defendant's human resources representatives, met with Hartridge and requested that she refrain from engaging in any offensive or inappropriate behavior. Id. Ex. DD, ECF No. 16-32; see also Carrington Dep. 37:14-38:6.

On June 1, 2010, Plaintiff submitted a written complaint about Shaeffer. Def.'s Mot. Summ J. Ex. FF, ECF No. 16-34. Therein, Plaintiff alleged that Shaeffer reprimanded her in front of other employees, falsely accused her of violating procedure, refused to let her read at her workstation, and isolated her from the team. Id. In a subsequent meeting with Ms.

Carrington, Plaintiff accused Shaeffer of racism. Id. Ex. HH, ECF No. 16-36.[2]

On July 6, 2010, Plaintiff submitted another written complaint about Nickerson. Id. Ex. QQ, ECF No. 16-47. Plaintiff alleged that Nickerson had jokingly accused her of having a mental disorder and had implied that said disorder was the true reason for her FMLA leave discussed below. Id. at 2-3.

In addition to Plaintiff's internal complaints, on June 25, 2010, Plaintiff filed a charge of racial discrimination against Defendant with the EEOC. Id. Ex. OO, EEOC Charge, ECF No. 16-45. The charge, stemming from the June 1, 2010, complaint, alleged that Shaeffer engaged in harassing and discriminating behavior towards Plaintiff on account of her race. Id. at 1-4. Tom Veitz, one of Defendant's human resources representatives and a decision-maker in Plaintiff's termination, testified to receipt of Plaintiff's EEOC charge "at the end of July." Veitz Dep. 32:19-21, Mar. 23, 2012, ECF No. 16-33.

Around the time of these complaints, Plaintiff started experiencing technical difficulties with her work phone. On June 8, 2010, Plaintiff complained in writing to Shaeffer that customers could not hear her over the phone. Allen Dep. vol. I,

_____

[2]    However, Plaintiff admits that she did not experience direct discrimination or harassment based on race. See Allen Dep. vol. II, 94:6-18, Mar. 14, 2012, ECF No. 20-1.

245:14-20; Pl.'s Resp. Ex. O, ECF No. 20-14. She requested a new headset, because she had to strain her voice to talk. Pl.'s Resp. Ex. O. On July 19, 2010, Plaintiff complained again in writing to Houser that "[c]ustomers all day have been calling in and saying they cannot hear me." Id. Ex. P, ECF No. 20-15. She also complained "that there were calls that were cutting out," and she "couldn't hear the customer." Id. Ex. B, at 13, ECF No. 20-1. She stated that the problem had been going on for the past month. Id. Ex. P. In response to each complaint, Defendant assisted her in resolving the issue, first replacing the telephone headset and then the batteries, although not the phone itself. See Allen Dep. vol. I, 142:23-147:24.

Plaintiff also requested and took FMLA leave three times during her employment: (1) from December 14 to December 20, 2009, Plaintiff took a one week leave of absence to stay home with her son after the child's hernia surgery, see Def.'s Mot. Summ. J. Ex. P; see also Allen Dep. vol. I, 42:12-21, 58:14-17; (2) from March 1, 2010, to April 5, 2010, Plaintiff took time off after a car accident, which leave was extended until she returned on May 12, 2010, see Def.'s Mot. Summ. J. Exs. Q-T, ECF Nos. 16-19 to -22; see also Allen Dep. vol. I, 59:12-64:11; and (3) from June 20 to June 27, 2010, Plaintiff took time off for stress and anxiety, see Def.'s Mot. Summ J. Exs. V-W, ECF Nos. 16-24 to -25; see also Allen Dep. vol. I, 65:9-66:3.

After Plaintiff returned from her third leave of absence and began experiencing issues with her telephone, and after Defendant received her EEOC charge, she received three write-ups. These included the following: (1) on July 28, 2010, Houser issued a written warning to Plaintiff for a no call/no show, Def.'s Mem. Supp. Summ. J. Ex. SS, Employee Corrective Action Notice, July 28, 2010, ECF No. 16-49; (2) on August 18, 2010, Houser issued a "final written warning" to Plaintiff as a result of her violation of Defendant's call policies and her treatment of customers, Id. Ex. TT, Employee Corrective Action Notice, Aug. 18, 2010, ECF No. 16-50; and (3) on August 25, 2010, Plaintiff received a "coaching notice" regarding her hanging up on a customer who was belligerent—Plaintiff did not follow procedure and escalate the call to her supervisor. Id. Ex. DDD, Employee Corrective Action Notice, Aug. 25, 2010, ECF No. 16-60. Before she filed her charge, Plaintiff had never received any write-ups. Pl.'s Resp. 5, ECF No. 19.

On August 20, 2010, Plaintiff emailed Veitz in response to the final written warning, blaming mechanical issues with her phone for problems Defendant had attributed to her performance. Id. at 38. She said that inbound callers could not hear her and that "the phone seemed to have some type of short in the line." Id. Ex. BBB, ECF No. 16-58. She said that no technician had investigated until August 17, 2010. Id. She wanted the warning

struck from her record. Id. However, Veitz investigated her

complaint, discussing her telephone issues with the IT

department, and determined that Plaintiff's conduct, and not

Plaintiff's mechanical problems, was to blame. Veitz Dep. 29:22-

31:4.

On September 2, 2010, Defendant terminated Plaintiff.

Defendant told Plaintiff that it was firing her for poor

performance. Allen Dep. vol. II, 48:1-2. This performance

included "repeatedly hanging up on Nutrisystem customers" and

"improperly handling calls" that had been forwarded to her. Pl.'s

Resp. Ex. M, ECF No. 20-12. Specifically, Defendant presents that

Plaintiff improperly disconnected 94 calls on August 30, 2010; 13

calls on August 31, 2010; and 46 calls on September 1, 2010.

Def.'s Mot. Summ J. Ex. EEE, ECF No. 16-61. Plaintiff would

answer a customer's call and then say nothing else, leaving the

customer on the line. Pl.'s Resp. Ex. M.[3]

Plaintiff places Defendant's receipt of her EEOC

complaint at approximately six weeks before her termination.

---

[3]     In addition to Plaintiff repeatedly hanging up on
customers, Defendant notes, and Plaintiff admits, that she was
doing school work during her shift. Def.'s Mem. Supp. Summ. J.
20; Allen Dep. vol. I, 91:7-20; Allen Dep. vol. II, 71:11-89:7.
As evidence, Defendant attaches multiple emails Plaintiff sent
between her personal account and her Nutrisystem account. See
Def.'s Mem. Supp. Summ. J. Exs. LL & MM, ECF Nos. 40-42. This
included materials for Plaintiff's English class and her anatomy
and physiology course. Id.

Pl.'s Resp. 5. Additionally, Plaintiff places her last FMLA leave at approximately two and a half months before her termination. Id. at 1.

## II. PROCEDURAL HISTORY

On June 23, 2011, Plaintiff filed the operative complaint in this case, which asserts claims for retaliation, hostile work environment, and racial discrimination, all under 42 U.S.C. § 1981 (Counts I and II), as well as retaliation for and interference with Plaintiff's exercise of her FMLA rights (Count III). Compl. 3-5. On August 12, 2011, Defendant answered. Answer 1, ECF No. 6.

On April 4, 2012, Defendant filed a motion for summary judgment on all of Plaintiff's claims. Def.'s Mot. for Summ. J. 1. On April 25, 2012, Plaintiff responded. Pl.'s Resp. 1, ECF No. 20.[4] And on December 12, 2011, Defendant replied. Def.'s Reply 1, ECF No. 21. The matter is now ripe for disposition.

## III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere

---

[4] In her Response, Plaintiff withdrew Count II and her FMLA interference claim in Count III. Id. Thus, only Plaintiff's § 1981 and FMLA retaliation claims remain.

existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## IV. SECTION 1981 CLAIM

Plaintiff asserts a retaliation claim under

42 U.S.C. § 1981.[5] Defendant is entitled to summary judgment on this claim.

Absent direct evidence of retaliation, a plaintiff employee may prove such a claim under the <u>McDonnell Douglas</u> framework. <u>See</u> <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 342 (3d Cir. 2006) (citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994)). First, the plaintiff must establish a prima facie case of discrimination. <u>See</u> <u>Estate of Oliva ex rel. McHugh v. New Jersey</u>, 604 F.3d 788, 798 (3d Cir. 2010). Upon establishing a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking adverse action against the plaintiff. <u>See</u> <u>id.</u> After the defendant establishes such a reason, the plaintiff shoulders the ultimate burden to prove that the proffered reason is false or mere pretext, and that the real reason is discrimination. <u>Id.</u>

Here, Plaintiff fails to establish a prima facie case of race discrimination. Furthermore, even if Plaintiff

---

[5]        42 U.S.C. § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a) (2012).

successfully established a prima facie case, Defendant articulates a legitimate, nondiscriminatory reason for taking adverse employment action against Plaintiff. And Plaintiff fails to establish that Defendant's proffered reason is pretext.

      1.   <u>Prima Facie Case</u>

      Whether a plaintiff has established a prima facie case is a question of law. <u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 797 (3d Cir. 2009). To satisfy a prima facie case for unlawful retaliation, a plaintiff must show: "(1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." <u>Estate of Oliva</u>, 604 F.3d at 798 (citing <u>Moore</u>, 461 F.3d at 340-41). Defendant concedes that Plaintiff engaged in protected activity and that she was terminated; thus, she satisfies the first two prongs. The parties dispute, however, whether Plaintiff satisfies the causation prong. As discussed below, Plaintiff fails to do so and thus fails to establish a prima facie case of retaliation under § 1981.

      Under the third prong of a prima facie retaliation claim, a plaintiff can adduce causation of retaliation through evidence that illustrates "close temporal proximity" and

circumstances indicating a "pattern of antagonism" following the protected conduct. <u>Marra v. Phila. Hous. Auth.</u>, 497 F.3d 286, 302, 306 (3d Cir. 2007) (citations omitted).

There is no clear demarcation as to what constitutes "temporal proximity." As described by the Third Circuit in <u>Fasold v. Justice</u>, "when only a <u>short period</u> of time separates an aggrieved employee's protected conduct and an adverse employment decision, such temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn." 109 F.3d 173, 178 (3d Cir. 2005) (emphasis added) (citing <u>Kachmar v. SunGuard Data Sys., Inc.</u>, 109 F.3d 173, 178 (3d Cir. 1997)). In <u>Fasold</u>, the Third Circuit found that the plaintiff had shown temporal proximity when fewer than three months had passed between the protected act and the challenged employment decision. 409 F.3d at 189-90. But the timing of alleged retaliatory conduct can, by itself, support a finding of causation only "when the 'temporal proximity' between the protected activity and adverse action is '<u>unduly suggestive</u>.'" <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 307 (3d Cir. 2012) (quoting <u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d 217, 232 (3d Cir.2007) (emphasis added)).

Although timing alone is insufficient, a showing of timing paired with a pattern of antagonism will typically provide sufficient support for a plaintiff's retaliation claim.

13

<u>Marra</u>, 497 F.3d at 305. In <u>Marra</u>, the plaintiff's computer was vandalized, the vandalism was never investigated, the plaintiff was excluded from an important meeting, and one of the plaintiff's key subordinates was reassigned to another department against the plaintiff's will. <u>Id.</u> at 304. Comparatively, in <u>Robinson v. Se. Pa. Trans. Auth.</u>, the Third Circuit found a pattern of antagonism based on a "constant barrage of written and verbal warnings[,] . . . inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge." 982 F.2d 892, 895 (3d Cir. 1993).

In this case, Plaintiff fails to establish causality between her EEOC charge and her termination. First, Plaintiff's evidence of temporal proximity is insufficient to stand alone as evidence of causation, because it is not "unduly suggestive" of retaliation. <u>LeBoon</u>, 503 F.3d at 232. Here, over a month elapsed between Defendant's receipt of her EEOC charge and her termination.[6] This is a far cry from <u>Jalil v. Avdel Corp.</u>, where

---

[6]     Plaintiff argues that, in addition to Plaintiff's termination, the earlier warnings she received should constitute adverse actions sufficient to reduce the time period between Defendant's receipt of her EEOC charge and the start of Defendant's retaliation. Plaintiff thus attempts to show that the period is short enough to be unduly suggestive of discrimination. However, Plaintiff's termination is the only adverse employment action that the Court considers to be retaliatory conduct.

An adverse employment action occurs when a reasonable employee finds the alleged retaliatory actions materially adverse in that they "'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Moore, 461 F.3d at 341 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). "'[T]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm.'" Id. (quoting Burlington, 548 U.S. at 67). The Third Circuit has recognized this standard as applicable to adverse employment actions in § 1981 and FMLA retaliation cases. Estate of Oliva, 604 F.3d at 798 (Section 1981 cases); Erdman v. Nationwide Ins. Co., 582 F.3d 500, 507 n.2 (3d Cir. 2009) (FMLA cases).

Written warnings can constitute adverse employment actions for the purpose of establishing the second prong of a prima facie retaliation claim. See Fleck v. WILMAC Corp., No. 10-5562, 2011 WL 1899198, at *10 (E.D. Pa. May 19, 2011) (finding plaintiff's allegations of unwarranted discipline sufficient to state a claim for FMLA retaliation when the defendants issued a disciplinary notice in a manner inconsistent with defendant's disciplinary scheme). When a warning is part of a progressive disciplinary policy such that each previous infraction raises the penalty for a subsequent infraction, courts in the Third Circuit have classified it as an adverse employment action. See Rivers v. Potter, No. 05-4868, 2007 WL 4440880, at *9 (D.N.J. Dec. 18, 2007) ("If . . . [the employer] employs a progressive disciplinary policy in which a previous infraction raises the penalty for a subsequent infraction, an employee could well choose not to . . . report discrimination if that might result in a letter of warning appearing in a personnel file even temporarily").

Plaintiff has not presented evidence that the warnings here were inconsistent with Defendant's disciplinary scheme as in Fleck, or that they were a part of a progressive disciplinary policy as in Rivers. Thus, there is no evidence to support that these warnings answer the "key inquiry [as to] 'whether the alleged retaliation might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Estate of Oliva, 604 F.3d at 798 (quoting Moore, 461 F.3d at 342). Further, even if the warnings satisfy the Burlington test, Houser testified that, at the time she issued them, she was unaware Plaintiff had filed an EEOC charge. Pl.'s Resp. Ex. F, Houser Dep. 9:1-10:6, Mar. 23, 2012, ECF No. 20-5. Therefore,

the protected act and the plaintiff's termination were separated by only two days. 873 F.2d 701, 708 (3d Cir. 1989). As such, Plaintiff must demonstrate circumstances indicating a pattern of antagonism in conjunction with her temporal-proximity evidence if she wishes to make out a causal link. However, Plaintiff offers only the two warnings and the coaching notice she received to establish a pattern of antagonism. When compared with Marra and Robinson, above, wherein the plaintiffs experienced continuous and extreme antagonistic treatment, the "antagonism" to Plaintiff is slight. Hence, the Court finds that Plaintiff has not met her burden with respect to the causation prong of her prima facie case and, by extension, that Plaintiff's § 1981 claim fails.

### 2.   Legitimate, Nondiscriminatory Reason

Once a plaintiff establishes a prima facie case, the burden of production (but not of persuasion) shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's [termination]." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). This burden of production is a low standard. See Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (("[T]he Defendant need not persuade the

_____

only Plaintiff's termination is applicable to the temporal-proximity analysis.

court that it was actually motivated by the proffered reasons.")
(internal quotation marks omitted)).

Even if Plaintiff could successfully establish a prima
facie case of retaliation, Defendant has articulated a
legitimate reason for terminating Plaintiff's employment.
Namely, Plaintiff's performance was poor over a period of
several weeks. Defendant provided evidence that Plaintiff was
doing school work and sending email between her home and
personal accounts during her shift. Defendant also provided
evidence that Plaintiff improperly disconnected 94 calls on
August 30, 2010, 13 calls on August 31, 2010, and 46 calls on
September 1, 2010.

3.   Pretext

Plaintiff has not established a prima facie case for
retaliation; nor has she sufficiently demonstrated that
Defendant's proffered legitimate, nondiscriminatory reason for
terminating her is pretext. In general, "a plaintiff may defeat
a motion for summary judgment by either discrediting the
defendant's proffered reasons or adducing evidence that
discrimination was more likely than not a determinative cause of
the adverse action." Anderson v. Wachovia Mortg. Corp., 621 F.3d
261, 271 (3d Cir. 2010). A plaintiff cannot discredit a
defendant employer's proffered reasons by showing they are

17

merely "wrong or mistaken" but must, instead, "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 764 (citations and internal quotation marks omitted).

Alternatively, a plaintiff may show evidence that discrimination influenced adverse action in several ways. In Simpson v. Kay Jewelers, the Third Circuit provided the following example: "the plaintiff may show that the employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." 142 F.3d 639, 645 (3d Cir. 1998).

When a plaintiff evidences such "comparators" to show that an employer has previously discriminated against other persons within the plaintiff's protected class, those comparators must be "similarly situated [to the plaintiff] in all relevant respects." Calero v. Cardone Indus., No. 11-3192, 2012 WL 2547356, at *14 (E.D. Pa. June 29, 2012) (citation omitted). Employees who hold different positions are not valid comparators. Id. Employees who engage in different misconduct are not similarly situated. Id.

Other courts in this district have also suggested that "[a]ppropriate comparators might be '[t]wo employees [who] dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" Klina v. Se. Pa. Transp. Auth., No. 10-5106, 2011 WL 4572064, at *8 (E.D. Pa. Oct. 3, 2011) (quoting Murphy v. Se. Pa. Trans. Auth., No. 09-1590, 2010 WL 571799, at *8 (E.D. Pa. Feb. 12, 2010)). Additionally, evidence that the employer treated other similarly situated persons not of the plaintiff's protected class more favorably can serve as evidence of discriminatory motive. Fuentes, 32 F.3d at 765.

Plaintiff cannot overcome Defendant's articulated legitimate reason for her termination. She has not "demonstrate[d] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id., 32 F.3d at 764 (citations and internal quotation marks omitted).

Plaintiff does not dispute that she completed school work during her shift. She does not dispute Defendant's evidence establishing dropped calls. She merely argues that Defendant is

wrong as to what caused the disconnections—she attributes them to mechanical failure. While she complained about her phone a few times during the course of her employment, Defendant responded with assistance each time. Also, she did not complain about her phone again after it was serviced on August 17, 2010. The evidence of her disconnections as discussed above occurred weeks after this date.[7]

Alternatively, Plaintiff fails to produce evidence of pretext establishing that Defendant previously discriminated against her, against other persons within Plaintiff's protected class, or treated more favorably similarly situated persons not within Plaintiff's protected class. She proffers evidence of comparators, but these comparators are within a class protected by the FMLA, not § 1981, and are therefore inapplicable to the present analysis. Therefore, as to her § 1981 claim, Plaintiff fails to rebut Defendant's legitimate, nondiscriminatory justification for firing Plaintiff.

---

[7] Plaintiff further argues that additional inconsistencies exist regarding the nature of the investigations of her various complaints and the identities of those involved in the decision to terminate her. See Pl.'s Resp. 25-26. Assuming arguendo that the record reflects such inconsistencies, they do not undermine Defendant's proffered reason for termination.

In conclusion, Plaintiff has not met any of the requirements necessary to survive Defendant's motion for summary judgment on her § 1981 claim.

## V. FMLA RETALIATION CLAIM

Plaintiff asserts a claim of FMLA retaliation.[8] Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

Similar to retaliation claims under § 1981, retaliation claims under the FMLA that are based on circumstantial evidence are assessed under the McDonnell Douglas burden-shifting framework. Lichtenstein, 691 F.3d at 307 (citing

---

[8]     The FMLA provides, in relevant part:

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee . . . .

29 U.S.C. § 2612 (2012).

_Conoshenti v. Pub. Serv. Elec. & Gas Co._, 364 F.3d 135, 147 (3d Cir. 2004), _modified on other grounds by_ _Erdman v. Nationwide Ins. Co.,_ 582 F.3d 500 (3d Cir. 2009)). To establish a prima facie case of FMLA retaliation, Plaintiff must show (1) she took FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to her leave. _Conoshenti_, 364 F.3d at 146. If Plaintiff can establish a prima facie case, the burden of production shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for its decision. _Lichtenstein_, 691 F.3d at 302 (quoting _McDonnell Douglass_, 411 U.S. at 802 (1973)). If Defendant meets this minimal burden, Plaintiff shoulders the ultimate burden to prove that the proffered reason is false and that the real reason is discrimination. _Id._ Plaintiff claims she was terminated in retaliation for the following three FMLA-protected activities: (1) a one-week leave of absence to care for her child after his hernia surgery; (2) a two-month leave of absence to recover from a car accident; and (3) a one-week leave of absence to recover from stress and anxiety.

### 1. Prima Facie Case

The parties agree that Plaintiff satisfies the first two requirements for showing a prima facie case of retaliation under the FMLA and dispute whether she satisfies the third. To

22

demonstrate causation, she must point to evidence sufficient to create an inference that a causative link exists between her FMLA leave and her termination. <u>Lichtenstein</u>, 691 F.3d at 307 (3d Cir. 2012). But she is unable to show that Defendant's decision to terminate her was causally related to her leave. The Court herein incorporates its analysis of temporal proximity and circumstances indicating a pattern of antagonism discussed <u>supra</u> Part IV.1.c. As a point of reference, Plaintiff's last FMLA leave occurred over two months before her termination. Thus, the Court finds that Plaintiff's temporal proximity evidence is even weaker under her FMLA retaliation claim than under her § 1981 retaliation claim. Further, the Court reasserts that Plaintiff has not met the evidentiary threshold for circumstances indicating a pattern of antagonism. Therefore, she cannot establish causation and cannot make out a prima facie case of retaliation.

2.  <u>Pretext</u>

Assuming arguendo that Plaintiff has satisfied the evidentiary burden of showing a prima facie case of FMLA retaliation, she cannot show pretext by establishing that Defendant discriminated against other members of Plaintiff's protected class. First, her comparator evidence is entirely deficient insofar as Plaintiff's comparators are not similarly

situated in all relevant respects. Diana Murphy, Plaintiff's first comparator, had a different supervisor. Def.'s Mot. Summ. J. Ex. GGG, at 1-2, ECF No. 16-63. Shirin Adams worked in a different position than Plaintiff and had a different supervisor. Id. Ex. HHH, at 1-2, ECF No. 16-64. Ashley Reed-Torres also had a different supervisor. Id. Ex. JJJ, at 1, ECF No. 16-66. Lastly, based on Plaintiff's own admission, Edith Munoz does not qualify as a comparator. See Pl.'s Resp. 15.[9]

Second, and as discussed above in the Court's § 1981 retaliation analysis, Plaintiff fails to discredit Defendant's proffered reason for termination and instead merely argues that the decision was wrong or mistaken. See discussion supra Part IV.3. Importantly, § 1981 and the FMLA are not general labor-

---

[9] The Court acknowledges that Plaintiff presented evidence of two new hires who work under the same supervisor as Plaintiff did, have never taken FMLA leave, and have not been terminated. See Houser Dep. 34:20-35:20. Plaintiff argues that this demonstrates Defendant's favorable treatment of persons outside of Plaintiff's protected class, but similarly situated to Plaintiff. However, Plaintiff's bare bones description of the new hires and total absence of details of their work habits does not suffice to show that they are similarly situated to Plaintiff "in all relevant aspects." Plaintiff has not demonstrated that these employees manifest similar habits, such as completing outside work during their shifts, leaving customers on hold, or disconnecting calls. The manifest lack of evidence renders the Court unable to determine whether these new employees "'had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" Klina, 2011 WL 4572064, at *8 (quoting Murphy, 2010 WL 571799, at *8).

relations statutes that address all matters of dispute in the workplace. They specifically protects against certain types of discriminatory conduct by an employer. Plaintiff ignores this principle and instead spends the bulk of her deposition and summary-judgment response discussing her petty office squabbles. This is insufficient to show that Defendant's legitimate, nondiscriminatory reason for terminating her is pretext. Accordingly, Plaintiff's FMLA retaliation claim cannot stand.

## VI. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment, enters judgment in favor of Defendant on all counts, and dismisses Plaintiff's Complaint with prejudice.